UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-131 (ECT/DTS)

UNITED STATES OF AMERICA,

Plaintiff,

v.

TEQUISHA SOLOMON,

Defendant.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

The United States of America and defendant TEQUISHA SOLOMON (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.      **Charges in this Case**. By this Agreement, defendant agrees to plead guilty to Count Two of the Indictment, which charges the defendant with wire fraud, in violation of 18 U.S.C. § 1343. The defendant has read the charges against her contained in the Indictment, and those charges have been fully explained to her by her attorney. The defendant fully understands the nature and elements of the crime with which she has been charged. At the time of sentencing, the government agrees to move to dismiss the remaining counts of the Indictment.

1

2.      **Factual Basis**.  The defendant is pleading guilty because she is in fact guilty of Count Two of the Indictment.  In pleading guilty, the defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

### *Federal Pandemic Assistance Programs*

The federal and state unemployment system for providing federal benefits to eligible unemployed American workers ("UI") has historically been administered through the states' respective workforce agencies, such as California's Employment Development Department ("EDD") and Minnesota's Department of Employment and Economic Development ("DEED").  Beginning in or about March 2020 and continuing through in or about September 2021, the federal government provided significant supplemental and expanded UI to offset the negative impacts of the COVID-19 pandemic on the American workforce.  As part of the application process, UI claimants were required to provide true and correct information, and to certify that their eligibility to receive UI from a certain state, and to certify that they had not previously applied for UI from a different state.  The state agencies relied upon the information provided by UI claimants in determining eligibility for UI benefits.

An additional source of funding authorized by federal law in 2020 and 2021 to combat the negative economic impacts of the COVID-19 pandemic was the authorization of loans to small businesses referred to as the Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loan (EIDL) program.  To obtain such loans, the small business applicant was required to certify, among other things,

average monthly payroll expenses, which was used to calculate the amount of money the small business was eligible to receive.  In addition, businesses applying for a loan were required to provide documentation, such as a tax return, showing their payroll expenses.  The loan proceeds were required to be used on certain permissible business expenses, including payroll costs, mortgage interest, rent, and utilities.

### *Defendant's Scheme to Defraud Federal Pandemic Assistance Programs*

From at least June 2020 through at least in or around January 2022, in the District of Minnesota, and elsewhere, the defendant executed a scheme to fraudulently obtain pandemic assistance money from various states, such as California's EDD and Minnesota's DEED, among others, as well as from the United States, that defendant knew that she, and others, were not entitled to receive.

As part of the fraud scheme, defendant claimed seeking UI benefits from states where she had no lawful basis to receive them.  For example, while defendant resided in Minnesota and Nevada, she caused the fraudulent submission of claims to California's EDD, in which she falsely claimed, among other things, that she worked and resided in Los Angeles, California.  As a result, California's EDD paid defendant at least $37,000 in periodic UI payments between approximately in 2020 and 2021, during which time she actually resided in either Minnesota or Nevada.

As an additional part of her scheme, the defendant unlawfully "double-dipped" by trying to obtain UI benefits from multiple states simultaneously.  For instance, in or about October 2020, the defendant fraudulently claimed UI benefits from the Illinois Department of Employment Security at which time she was actually residing

3

in Minnesota and was already fraudulently receiving UI benefits from California's EDD. In addition, in or about March 2021, defendant fraudulently applied for UI from Minnesota's DEED, and concealed her fraudulent receipt of UI benefits from California and Illinois.

It was further part of defendant's scheme that she also fraudulently applied for EIDL and PPP small business loans that were based, among other falsehoods, upon fake payroll information and bogus tax records to deceive lenders.

In addition to fraudulently obtaining pandemic-related benefits for herself, defendant also assisted others to obtain pandemic-related funds in exchange for a fee, which varied but at times was as much as $2,000, which she either knew were fraudulent when submitted or were submitted without to regard to the truthfulness of the application. As such, defendant submitted over 200 false and fraudulent applications for UI benefits on behalf of others.

Defendant was aware that many of the) UI applications and loan applications she submitted in the names of other claimants were false regarding the claimants' employment history and availability to work. For example, as alleged in Count Two of the Indictment, on or about July 16, 2020, defendant caused the interstate electronic submission from Minnesota of a fraudulent claim for UI benefits to California's EDD, for an inmate who was actually incarcerated at a Minnesota prison at that time and thus ineligible to receive UI.

In total, records show that Ms. Solomon applied for approximately $110,000 in fraudulent benefits for herself and received well over $100,000 for assisting others'

4

fraudulent claims. The majority of Ms. Solomon's conduct involved her fraudulent submissions for others. In all, defendant applied fraudulently for $7,149,032 in pandemic-related funds, and defendant caused the United States and multiple state agencies to pay out at least $4,708,191 in the form of fraudulent UI benefits and small business loan proceeds.

3.   **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in this case. The defendant agrees that, by pleading guilty, she is withdrawing any motions previously filed.

4.   **Waiver of Constitutional Trial Rights.** The defendant understands that she has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that she has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent her. The defendant understands that she has the right to persist in a plea of not guilty and, if she does so, she would have the right to a

5

public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences**. The defendant understands that as a result of her conviction, she could experience additional consequences, such as the loss of the right to carry firearms, the loss of certain federal benefits, the right to vote, and the right to hold public office.

6. **Statutory Penalties**. The defendant understands that Count Two of the Indictment (wire fraud, in violation of 18 U.S.C. § 1343) is a felony offense that carries the following maximum statutory penalties:

    a.    20 years in prison;
    b.    supervised release term of 3 years;
    c.    fine of $250,000, or twice the gross gain or loss from the offense, whichever is greater;
    d.    mandatory special assessment of $100; and
    e.    payment of mandatory restitution in an amount to be determined by the Court.

7. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the

6

appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

a.   Base Offense Level. The parties agree that the base offense level for wire fraud is 7. (U.S.S.G. § 2B1.1(a)(1)).

b.   Specific Offense Characteristics. The parties agree that the offense level should be increased by 18 levels because the intended loss ($7,149,032) resulting from the offense was more than $3,500,000 but not more than than $9,500,000. U.S.S.G. § 2B1.1(b)(1)(J). The parties agree that no other specific offense characteristics apply.

c.   Chapter 3 Adjustments. The parties agree that, other than acceptance of responsibility, no other Chapter 3 adjustments apply.

d.   Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of her intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report.

e.   Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category VI. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands

7

that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within her criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on her true criminal history category, and she will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f. Guidelines Range. If the adjusted offense level is 22, and the criminal history category is VI, the Sentencing Guidelines range is **84 to 105 months of imprisonment**.

g. Fine Range. If the adjusted offense level is 22, the Sentencing Guidelines fine range is $15,000 to $150,000. U.S.S.G. § 5E1.2(c)(3).

h. Supervised Release. The Sentencing Guidelines require a term of supervised release of at least 1 year up to a maximum supervised release term of 3 years. U.S.S.G. § 5D1.2(a)(2).

8. **Agreements as to Sentencing Recommendation**. The government agrees that it will not argue for a sentence of more than the high-end of defendant's guidelines range, unless defendant, while awaiting sentencing, commits further crimes or engages in conduct inconsistent with acceptance of responsibility. Defendant reserves the right to make departure motions and the government reserves the right to oppose any such motions. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw her guilty plea.

9. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history

category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10.    **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

11.    **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

12.    **Restitution Agreement**. Defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of her crime. The parties agree that the amount of restitution is at least $4,708,191 (which includes $4,666,318 in UI benefits and $41,873 in small business loans).

9

13. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of her guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate her ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14. **Venue Waiver.** Recognizing that the criminal conduct in this case occurred in the State and District of Minnesota, as well as in various other states and districts in the United States, the defendant waives all rights to challenge venue in the State and District of Minnesota.

15. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud, as charged in Count 2 of the Indictment.

10

16.     Defendant agrees that the specific property subject to forfeiture in the Indictment includes but is not limited to :

    a.    a 2016 Jaguar Sedan, bearing VIN: SAJBD4BV5GCY21649 and temporary Nevada license plate number NX-672-282; and

    b.    $25,000 in funds seized from Comerica Bank account x9341 in the name of "Auto Mall Automotive DBA Tobin Dodge Ram."

(collectively, "the Seized Property").

Defendant admits that the Seized Property is subject to forfeiture because it constitutes or is traceable to the wire fraud scheme alleged in Count 2 of the Indictment.

17.     The United States reserves its right to seek a forfeiture money judgment, to forfeit substitute assets, and to forfeit additional directly forfeitable property. Defendant will receive a credit against this money judgment for the net value of all assets that are forfeited from her in connection with this matter.

18.     Defendant agrees that the United States may, at its option, forfeit the Seized Property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest she may have in the property.  Defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds. To the extent defendant has sought remission or otherwise challenged the forfeiture of the above-described property, she withdraws any such challenges.

19. Defendant further agrees that she will not assist any third parties with regard to any claims or petitions that third parties might file in subsequent administrative or judicial forfeiture proceedings for the Seized Property.

20. **Waivers of Appeal and Collateral Attack**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above 105 months' imprisonment. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the government may appeal the substantive reasonableness of a term of imprisonment below 84 months' imprisonment.

21. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

## Conclusion

22.    This is the entire agreement and understanding between the United States and defendant.

23.    Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement, to cause defendant to plead guilty.

24.    Defendant acknowledges that she has read this Plea Agreement and carefully reviewed each provision with her attorney.    Defendant further acknowledges that she understands and voluntarily accepts every term and condition of this Plea Agreement.

ANDREW M. LUGER
United States Attorney

Date: _12-13-2022_

BY:    MATTHEW S. EBERT
Assistant United States Attorney

Date: _12-13-22_

TEQUISHA SOLOMON
Defendant

Date: _12-13-22_

DOUGLAS OLSON
MATTHEW DEATES
Assistant Federal Defenders

13